Lewis Roca Rothgerber LLP
40 North Central Avenue
Suite 1900
Phoenix, Arizona 85004-4429
Telephone: 602.262.5311

Randy Papetti, State Bar No. 014586
Direct Dial:  602.262.5337
Direct Fax:  602.734.3865
EMail:  RPapetti@LRRLaw.com
Robert G. Schaffer, State Bar No. 017475
Direct Dial:  602.262.0271
Direct Fax:  602.734.3777
EMail:  BSchaffer@LRRLaw.com
William G. Voit, State Bar No. 025808
Direct Dial:  602.262.5725
Direct Fax:  602.734.3931
EMail:  WVoit@LRRLaw.com

Attorneys for Plaintiffs Puppies 'N Love,
a d/b/a of CPI, Inc.; Frank Mineo; Vicki Mineo

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Puppies 'N Love, a d/b/a of CPI, Inc.; Frank Mineo; Vicki Mineo, <br><br> Plaintiffs, <br><br> vs. <br><br> City of Phoenix, <br><br> Defendant. | No. <br><br> **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Puppies 'N Love, a d/b/a of CPI, Inc., and its owners Frank Mineo and Vicki Mineo, hereby sue the Defendant City of Phoenix and allege as follows:

**NATURE OF THE ACTION**

1.  This lawsuit challenges the constitutionality of Ordinance No. G-5873 ("the Ordinance"), adopted by the City of Phoenix at a City Council meeting on December 18, 2013. The Ordinance goes into effect on January 17, 2014.

2.  Under the Ordinance, a Phoenix pet shop can sell only dogs purchased from an animal shelter, a nonprofit humane society, or a nonprofit animal rescue organization (hereinafter a "random source" facility). The Ordinance thereby prohibits pet shops from selling a puppy purchased from any breeder, no matter how reputable.

3.  The Ordinance creates a criminal offense for a pet shop selling puppies purchased even from the most loving and responsible breeders. For instance, even if a

1  breeder is licensed by the U.S. Department of Agriculture (USDA), meets and exceeds all
2  USDA requirements, and breeds and rears the dogs in impeccable conditions, a pet shop still
3  cannot sell a puppy purchased from that breeder.

4        4.      The City of Phoenix has represented that the Ordinance is motivated by a
5  desire to address "the problem of puppy and kitten mills." The City of Phoenix in the City
6  Council Report on the Ordinance also stated that "the problem of puppy and kitten mills
7  exists beyond the City limits."

8        5.      "Puppy mill" is a pejorative term, defined by the City of Phoenix in the City
9  Council Report on the Ordinance, as referring to "a large-scale commercial dog breeding
10 operation where profit is given priority over the well-being of the dogs."

11       6.      Not every puppy breeder in the United States is a "puppy mill" under the
12 City's definition. In other words, not every puppy breeder is "a large-scale commercial dog
13 breeding operation where profit is given priority over the well-being of the dogs."

14       7.      There are breeders in the United States that provide humane and loving
15 environments for their animals, and they invest heavily to meet high standards of care.

16       8.      Not every pet shop buys puppies purchased from "puppy mills."

17       9.      Puppies 'N Love is a responsible, family-owned, and family-operated pet shop
18 that specializes in selling pure- and specialty-breed puppies. Puppies 'N Love was founded
19 in Phoenix over thirty-five years ago. Frank Mineo and his sister, Vicki, have dedicated
20 their careers to selling puppies the right way, buying only from responsible breeders and not
21 from "puppy mills." Puppies 'N Love has an exacting program to ensure that it purchases
22 only from breeders who do not give priority to "profit . . . over the well-being of the dogs."
23 Puppies 'N Love has never had any animal welfare violations under any law.

24      10.     As Puppies 'N Love's business is the sale of pure- and specialty-breed
25 puppies, and random source facilities cannot provide it with an economically-viable source
26 for sustaining that business, the effect of the Ordinance is that this family-owned business,
27 which has been legal for the last thirty-five years, will be required to close down. If the
28 store closes down, employees will have to be laid off.

4184970.1

11. Under an exception to the very same Ordinance, a local breeder located in Phoenix, which sells dogs "that were bred and reared on the premises," can continue to sell dogs. Even "a large-scale commercial dog breeding operation where profit is given priority over the well-being of the dogs" is not prohibited by the Ordinance from selling to the public, so long as the dogs "were bred and reared on the premises."

12. The Ordinance also does nothing to prevent puppy sales over the internet or by other remote means. Internet transactions account for a greater number of sales than pet shop transactions and are also less accountable and less susceptible to regulation or oversight than a pet shop. Purebred puppies are essentially non-existent in random source facilities. Thus, a consumer who desires to purchase a pure- or specialty-breed puppy after the Ordinance becomes effective is more likely to go through an internet broker than a pet shop.

13. In criminalizing the purchase of puppies from good breeders through reputable pet shops like Puppies 'N Love, the Ordinance doesn't just put these reputable pet shops out of business, depriving consumers of a key ally in sifting good breeders from bad. It also drives consumers looking for purebred puppies straight to the very bad actors the Ordinance claims to abhor. It thereby ensures a market for purebred puppies operating without significant oversight or accountability, in which the lowest common denominator prevails.

14. Plaintiffs request declaratory relief that the Ordinance violates the dormant Commerce Clause, fails even a rational basis review under equal protection, is void for vagueness, is statutorily preempted by Arizona's "Puppy Lemon Law," and violates Arizona's constitutional prohibition against special laws. Plaintiffs further request injunctive relief preventing the City from enforcing the Ordinance as to them.

15. Because of the significant and irreparable harm that is about to be visited by the Ordinance should it go into effect at the end of the week, Plaintiffs respectfully request a temporary restraining order and preliminary injunction to enjoin the City from enforcing the Ordinance as to them during the pendency of this litigation.

4184970.1

## PARTIES

16. Plaintiff Puppies 'N Love, a d/b/a of CPI, Inc., is a pet store located in Phoenix, Arizona and subject to the Ordinance. Plaintiffs Frank Mineo and Vicki Mineo, brother and sister, are owners of the Puppies 'N Love store.

17. Defendant City of Phoenix is a governmental entity existing and operating under Arizona law and subject to the United States and Arizona Constitutions. Defendant City of Phoenix, through the Phoenix City Council, promulgated and will enforce the Ordinance.

## JURISDICTION AND VENUE

18. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. The Court has personal jurisdiction over Defendant because it is located in this judicial district. The Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1343, 2201, and 2202.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

20. Because Plaintiffs seek only declaratory and injunctive relief, no notice of claim is required to be filed with Defendant under A.R.S. § 12-821.01. *See Martineau v. Maricopa Cnty.*, 207 Ariz. 332, 336-37, ¶¶22-24, 86 P.3d 912, 916-17 (App. 2004); *State v. Mabery Ranch Co.*, 216 Ariz. 233, 245, ¶¶52-53, 165 P.3d 211, 223 (App. 2007).

## FACTS

**A.  Plaintiffs' Business**

21. Puppies 'N Love's business is devoted to the sale of responsibly and ethically raised pure- and specialty-breed puppies. Puppies 'N Love does not obtain its dogs from facilities stocked by random sources, such as shelters. There simply is not a reliable supply (indeed, any appreciable supply) of purebred puppies in such facilities.

22. Plaintiffs support the existence of reasonable random source facilities. Plaintiffs, for instance, donate their own food to local no-kill shelters and provide, at their own cost, space for rescue dogs in one of their stores. But the market will not support Puppies 'N Love as a shelter or other random-source facility.

23.     Puppies 'N Love does not buy puppies from "puppy mills."  To the contrary, Puppies 'N Love markets itself as an alternative to disreputable sources of puppies.  For example, it provides a pamphlet to potential customers inviting them to "Compare Us to Others," pointing out (among much else) that "All [our] puppies have been examined by two different licensed veterinarians and include a complimentary post-purchase vet exam," that "Our puppies are selected from inspected, USDA licensed breeders and inspections are personally reviewed by our staff," that it provides a health warranty and Comprehensive Hereditary Health Plan, and that "99% of all our customers never have to activate the hereditary warranty due to our rigorous screening process."

24.     Plaintiffs have long been supporters of responsible animal welfare legislation.  For instance, while some in Arizona's pet industry opposed enactment of Arizona's "Puppy Lemon Law" (requiring, among other things, vet examinations, minimum standards of care, and health warranties for dogs sold in Arizona's pet shops, *see* A.R.S. §§ 44-1799 *et seq.*), Plaintiffs supported enactment of the law.

25.     Puppies 'N Love sells only puppies coming from USDA-licensed Class A breeders and hobby breeders (of four or fewer breeding females).[1]  If a breeder ever is found to have a direct violation on any of its publicly-available USDA inspection reports (available online), Puppies 'N Love will not buy from it.  The breeders from which it does buy are, overwhelmingly, small and family-owned businesses with whom Puppies 'N Love has established long-term relationships and whom it has investigated, and come to know and trust, as providing a healthy and loving environment in which the puppies are bred and raised.

26.     Puppies 'N Love also rigorously evaluates puppies when they arrive to maintain its high standards.  All puppies are given a thorough examination by Arizona

---

[1] The USDA defines such violations as "a noncompliance that is currently adversely affecting the health and well-being of the animal, or has the high potential to adversely affect the health and well-being of the animal in the near or immediate future."  It includes problems like health conditions of the animals (e.g., presence of contagious disease, respiratory conditions); handling of animals (e.g., as failing to provide sufficient heating or cooling, behavioral stress due to handling non-compliances); insufficient floor space; and no opportunity for exercise.

1 Licensed Veterinarians before they become available to the public. Puppies 'N Love owns
2 and operates its own veterinary clinic exclusively for the purpose of examining and
3 evaluating the puppies. The store employs Animal Care Technicians who ensure the
4 puppies are healthy, eating appropriately, administer any necessary medications and
5 vaccines, monitor and document bodily functions, groom and examine each puppy daily,
6 and actively maintain strict sanitary guidelines. Every puppy receives exercise and
7 socialization activities daily. Puppies 'N Love has never had any animal welfare violations.

**B.  Ordinance No. G-5873**

27.  The day before the December 18, 2013 City Council meeting that adopted this Ordinance, Plaintiffs learned that the City was contemplating this measure that would close its business. There had been no outreach to Plaintiffs or the community by members of the council before the hearing.

28.  The very next day, at the December 18 council meeting, the Ordinance was passed. Several members of the City Council remarked during the meeting at how surreptitious and rushed the Ordinance's enactment had been, without community outreach. Three members even moved to move the issue to the next Council meeting so that it could be more thoroughly vetted and considered, with more community input, but that was voted down by the same 5-3 majority that went on to vote to enact the Ordinance.

29.  The Ordinance adds a new Phoenix City Code Section 8-3.06, titled "Prohibition on sale of dogs or cats." That section prohibits a "pet shop or pet dealer" from selling, displaying, or making any use of a dog or cat purchased from any source other than a random source facility:

> A. No pet shop or pet dealer shall display, sell, deliver, offer for sale, barter, auction, give away, broker or otherwise transfer or dispose of a dog or cat except for a dog or cat obtained from:
> 1. An animal shelter;
> 2. A private, nonprofit humane society or nonprofit animal rescue organization; or
> 3. An animal shelter, nonprofit humane society or nonprofit animal rescue organization that operates out of or in connection with a pet shop.

Phx. City Code § 8-3.06(A).

4184970.1

30. The Ordinance precludes, on pain of criminal penalties, pet shops from purchasing dogs from any breeders for sale to the public, no matter how reputable the breeder is and regardless of whether it is a "puppy mill."

31. "*Pet dealer* means a person who owns or operates a pet shop," and "*Pet shop* means any establishment at which are kept for sale any animals generally considered to be household pets, but excluding kennels or livery stables." Phx. City Code § 8-1. "*Kennel* means an enclosed, controlled area, inaccessible to other animals, in which a person keeps, harbors or maintains five or more dogs under controlled conditions." *Id.*

32. The Ordinance also contains a record-keeping requirement regarding the sources of animals that applies only to "pet shops and pet dealers." Phx. City Code § 8-3.06(B).

33. "Animal shelter" is defined as "any establishment maintained by the Maricopa County Board of Supervisors or the City of Phoenix for the confinement and maintenance of dogs and other animals that come into the custody of the County or City in the performance of its official duties together with any establishment maintained by a nonprofit organization for the relief of suffering of dogs and other animals provided that such establishment maintains facilities under the supervision of a licensed veterinarian for the confinement, maintenance, safekeeping and control of dogs and other animals that come into its custody." Phx. City Code § 8-1.

34. The Ordinance also contains an exemption for local breeders, allowing people who breed and rear dogs on their premises to sell within the City of Phoenix:

> C. this section does not apply to; [sic]
>   1. A person or establishment, other than a pet shop or pet dealer, which displays, sells, delivers, offers for sale, barters, auctions, gives away, brokers or otherwise transfers or disposes of only dogs and cats that were bred and reared on the premises of the person or establishment.

Phx. City Code § 8-3.06(C).

7

4184970.1

35. The Ordinance also adds a new Section 8-3.07, which prohibits the use of live animals as prizes or inducements. Plaintiffs do not challenge or seek relief regarding Section 8-3.07.

36. Because the Ordinance creates an offense but does not provide a specific penalty, its violation is subject to the general penalty provision of the Phoenix City Code: "a Class 1 misdemeanor punishable by a fine not exceeding two thousand five hundred dollars or imprisonment for a term not exceeding six months or probation not to exceed three years or any combination of such fine and imprisonment, and probation in the discretion of the City magistrate." Phx. City Code § 1-5. Under that provision, "[e]ach day any violation of any provisions of this Code or of any ordinance shall continue shall constitute a separate offense." *Id.*

37. The Ordinance's effective date is Friday, January 17, 2014.

## CAUSES OF ACTION

## COUNT ONE — DECLARATORY RELIEF (COMMERCE CLAUSE)

38. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

39. The Ordinance discriminates against interstate commerce and is unconstitutional under the "negative" or "dormant" power of the Commerce Clause. U.S. Const. art. 1, §8, cl. 3.

40. The Ordinance has a discriminatory effect by banning local pet shops from selling dogs imported from non-local breeders. This effectively prevents out-of-state breeders from having physical access to market demand for pure- and specialty-breed puppies in the City of Phoenix. In-state local breeders, who may sell puppies (ironically, even if they are "puppy mills"), retain physical access to that market by virtue of being located in the City. Restricting out of state suppliers' access to local markets is impermissible discrimination against interstate commerce. Out-of-state breeders are further economically disadvantaged in competition for Phoenix consumers because they now must either market themselves remotely, as by the internet, or move to Phoenix to market directly to its consumers.

4184970.1

41. The Ordinance also is motivated by a discriminatory purpose to incentivize Phoenix consumers to go to their local breeders to buy pure- and specialty-breed puppies.

42. At the December 18 City Council meeting, in response to a statement that the Ordinance would drive consumers to internet brokers, a proponent of the Ordinance on the City Council responded: "I'm just saying that's not true. You can get purebred dogs from breeders locally and not off the internet. I mean, there's a very good system here in Phoenix."

43. The proponent also stated: "You can buy from a breeder. You can still get a registered dog, a purebred if that's what you want. It does not mean that that is prohibited under this ordinance in any way. And I -- it does not mean that you have to go to Craigslist or the internet. There are plenty of local breeders. I have one that lives right across the street. Fantastic operation, very small, puppies play outdoors, mom's out, and she has a waiting list for puppies."

44. Another of the Councilmember-proponents of the Ordinance stated: "What we're doing is eliminating the third party. We're eliminating the broker. We're eliminating that intermediary so the consumer goes directly to the breeder him or herself."

45. Driving the consumer to go directly to a local producer is an impermissible purpose under the dormant Commerce Clause.

46. The Ordinance is also facially discriminatory.

47. The definitions section of the Phoenix City Code provides that an animal shelter, a permissible source of dogs for pet shops, must be either "maintained by the Maricopa County Board of Supervisors or the City of Phoenix" or "under the supervision of a licensed veterinarian," which is defined as "any veterinarian licensed to practice in this State or any veterinarian employed in this State." Phx. City Code § 8-1. Thus, no non-Arizona animal shelter is a permissible source for pet shop dogs.

48. Laws that discriminate against interstate commerce are virtually per se invalid. The locality has a burden of rigorous and strictest scrutiny to justify the law both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory

alternatives adequate to preserve the local interests at stake.  The City can meet neither of these heavy burdens; the claimed problem of "puppy mills" is asserted to be nationwide in scope, not justifying local discrimination, and the City has ample regulatory options for combating the problem of "puppy mills" without banning pet shops' sales of dogs from all breeders.

49. Even if the law were not discriminatory, its burden on interstate commerce still must not be excessive in relation to the putative local benefits.  The Ordinance fails this test as well because the Ordinance substantially affects interstate commerce while actually being counter-productive of its aims, depriving consumers of purebred puppies of a regulated and accountable source of such puppies and leaving them with the main practical option of going to significantly less regulated and largely unaccountable internet and similar remote brokers.

50. Plaintiffs are entitled to an order declaring the Ordinance unconstitutional under the Commerce Clause of the United States Constitution.

**COUNT TWO — DECLARATORY RELIEF (EQUAL PROTECTION OF LAWS)**

51. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

52. The Ordinance violates Puppies 'N Love's right to equal protection of the laws under the United States and Arizona Constitutions.  *See* U.S. Const. Amend. XIV; Ariz. Const. art. II, § 13.

53. There are serious questions that the Ordinance is not a legitimate regulation of a local interest.  Concerns about "puppy mills" would surely be a national or statewide, rather than just a local problem.  The City's stated desire to punish behavior "beyond the City limits," coupled with its exemption of local breeders' sales within Phoenix (regardless of whether those local breeders are "puppy mills"), suggests that there is an impermissible local purpose at work.

54. Banning pet stores from selling puppies from breeders does not rationally advance the goal of eliminating so-called "puppy mills."

55. The Ordinance is over-inclusive, in that it bans pet stores from selling puppies, regardless of whether they come from reputable breeders that are not "puppy mills." Indeed, the Ordinance bans pet stores from selling even puppies purchased from the local breeders that the Ordinance otherwise allows to sell to the public.

56. The Ordinance is also under-inclusive, failing to ban the very same sales of ostensibly "puppy mill" dogs from other sources, such as local breeders, retailers that are not an "establishment" under the Ordinance, internet or other remote sellers, and even animal shelters or "rescue" organizations that, wittingly or unwittingly, can end up buying "puppy mill" puppies and passing them on to consumers. Pet stores are just a small fraction of dog purchases (the ASPCA, itself a backer of pet store bans, estimates only 2-10%), rendering the underinclusiveness substantial.

57. The Ordinance is not only seriously misaligned with the problem it claims to address, but it is actually counterproductive. The Ordinance criminalizes conduct by pet stores, which can be regulated and held accountable, while driving demand to internet brokers, which are virtually impossible to police and which are much more likely to buy from bad breeders.

58. The Ordinance is an irrational and impermissible violation of equal protection.

59. Plaintiffs are entitled to an order declaring the Ordinance unconstitutional under the equal protection provisions of the United States and Arizona Constitutions.

**COUNT THREE — DECLARATORY RELIEF (VAGUENESS)**

60. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

61. Laws are required to be drafted such that regulated parties, as persons of ordinary intelligence, know what is required of them so they may act accordingly. Precision and guidance, in the form of sufficiently-definite guidelines to govern law enforcement, are also necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. Laws that fail the vagueness test are unconstitutional and may not be enforced.

62. Laws creating a criminal penalty are subject to greater vagueness scrutiny than laws merely providing for civil penalties.

4184970.1

63. The Ordinance here is unconstitutionally vague in numerous ways. The Ordinance is not drafted so as to provide fair guidance for parties to understand whether and how the Ordinance applies to them, nor does it provide sufficient precision such that City authorities are disabled from enforcing it in an arbitrary and discriminatory way.

64. For instance, it provides that a "pet shop" is "any establishment at which are kept for sale any animals generally considered to be household pets, but excluding kennels or livery stables." But a "kennel" is any "enclosed, controlled area, inaccessible to other animals, in which a person keeps, harbors or maintains five or more dogs under controlled conditions." Puppies 'N Love seems to be both a "pet shop" and a "kennel," in that it both keeps household pets for sale and also provides an enclosed, controlled area, inaccessible to other animals, where it keeps five or more dogs. The Ordinance would seem to both apply and not apply to virtually any pet store, allowing law enforcement to pick and choose what facilities it wishes to prosecute and which ones it does not.

65. The Ordinance also provides no guidance as to what an "establishment" is. It could be any location, or any business, or any institution, or some combination of the three. It could include home-based businesses or not, unincorporated operations or not, or individuals re-selling dogs or not.

66. The Ordinance also is circular in defining the local breeder exception. A local breeder selling dogs, even those bred and reared on the premises, is certainly an "establishment at which are kept for sale any animals generally considered to be household pets," and thus would seem to be a "pet shop." The local breeder provision, however, exempts only "[a] person or establishment, <u>other than a pet shop or pet dealer</u>," where the dogs "were bred and reared on the premises." Consequently, it is not clear whether there is a local breeder exemption at all, or if so precisely who is in it and why. The Ordinance is ripe for selective enforcement.

67. Plaintiffs are entitled to an order declaring the Ordinance void for vagueness.

**COUNT FOUR — DECLARATORY RELIEF (PREEMPTION BY STATE LAW)**

68. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

69. The Ordinance is preempted by Arizona's state "Puppy Lemon Law," A.R.S. § 44-1799 *et seq.*

70. A local law is preempted by a state statute if the subject is a matter of statewide concern and state law either occupies the field or local enactment will conflict with the state law.

71. Regulating the conditions under which dogs imported into the state from breeders may be sold to consumers is a matter of statewide concern.

72. The state statute is aimed at regulating those conditions, and it contains numerous provisions designed to ensure that dogs purchased by pet shops and sold to the public come from healthy and safe conditions. It even expressly refers to USDA breeders as a permissible "source" for pet shops, with regulations for information that must be passed on if the puppy comes from such a breeder. Random source facilities, on the other hand, are not regulated by the Puppy Lemon Law and, by their very nature, must be able to sell "lemon" dogs, which oftentimes are in the facility precisely because they require expensive veterinary care or have behavioral issues. The state statute would be rendered a nullity in Phoenix if random source facilities are the only permissible sources of dogs for pet shops.

73. Plaintiffs are entitled to an order declaring the Ordinance preempted by state law.

### COUNT FIVE — DECLARATORY RELIEF (SPECIAL LAW)

74. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

75. The Ordinance violates the Arizona Constitution's prohibition on the enactment of special laws, Ariz. Const. art. 4, pt. 2, § 19(13), (20).

76. The Ordinance arbitrarily denies pet shops the right to maintain a lawful and humane business even though they are similarly situated with respect to other puppy sellers, like local breeders, who are allowed to sell even "puppy mill" dogs to the public (as of course may internet and other remote sellers).

77. There is no rational basis for such a distinction; it is actually counterproductive by driving consumers looking for purebred dogs to less accountable and

largely unregulated sources.  The Ordinance also fails to encompass all members of the relevant class—supposed sellers of "puppy mill" dogs—by allowing (for example) in-state local breeders, third party resellers who lack an "establishment" for keeping the dogs for sale, and even well-intentioned but misguided (or perhaps some ill-intentioned) animal shelters and animal rescue organizations that obtain puppies from "puppy mills," all to sell those puppies to the public.

78. Plaintiffs are entitled to an order declaring the Ordinance unconstitutional under the special law provision of the Arizona Constitution.

## COUNT SIX — INJUNCTION

79. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

80. Because the Ordinance is unconstitutional, Plaintiffs are entitled to an injunction against Defendant from enforcing the Ordinance as to them.  Plaintiffs will suffer irreparable harm from its unconstitutional enforcement, including the closure of the Puppies 'N Love store, the loss of intangible goodwill, the requirement to lay off employees, the stigma of having been closed to avoid supposed "animal cruelty," and other similar harms that would be devastating to Plaintiffs.

81. Furthermore, Plaintiffs will suffer immediate and irreparable injury, loss, and damage if the Defendant is not temporarily enjoined and preliminarily restrained from enforcing the Ordinance as to Plaintiffs.

82. Plaintiffs are likely to succeed on the merits of its claims or, at the very least, raise serious questions about the constitutionality of the Ordinance.

83. The balance of hardships tips sharply in Plaintiffs' favor because a temporary restraining order and preliminary injunction would merely place the constitutional questions on hold pending trial, and the failure to issue such preliminary relief would cause Plaintiffs to suffer irreparable injury if the Ordinance is enforced as to them during the pendency of this action.

4184970.1

84. The issuance of a temporary restraining order and preliminary injunction is in the public interest because the public is served by enjoining the potentially unconstitutional government conduct while the merits are explored more thoroughly.

85. Granting a temporary restraining order will serve the interest of preserving the status quo.

86. Defendant will suffer no damage by the issuance of a temporary restraining order.

87. Thus, the Court should also issue a temporary restraining order and preliminary injunction pending conclusion of the merits of this action.

## PRAYER FOR RELIEF

88. Plaintiffs respectfully request:

   a. An order declaring the Ordinance unconstitutional under the Commerce Clause of the United States Constitution;

   b. An order declaring the Ordinance unconstitutional under the equal protection provisions of the United States and Arizona Constitutions;

   c. An order declaring the Ordinance void for vagueness;

   d. An order declaring the Ordinance preempted by state law, A.R.S. § 44-1799 *et seq.*;

   e. An order declaring the Ordinance unconstitutional under the special law provision of the Arizona Constitution, Ariz. Const. art. 4, pt. 2, § 19(20);

   f. An injunction directed to the City of Phoenix, its officers, agents, servants, employees, and attorneys, and any other person acting in concert or participation with any of them, from enforcing the Ordinance against Plaintiffs;

   g. A temporary restraining order and preliminary injunction enjoining enforcement of the Ordinance as to Plaintiffs pending the conclusion of the merits of this action;

      h.    Such reasonable costs and attorneys' fees as are available in law or equity; and

      i.    All such other and further relief to which Plaintiffs may be justly entitled.

DATED this 14th day of January, 2014.

                              LEWIS ROCA ROTHGERBER LLP

                              By /s/William G. Voit
                                  Randy Papetti
                                  Robert G. Schaffer
                                  William G. Voit
                              Attorneys for Plaintiffs Puppies 'N Love, a d/b/a of CPI, Inc.; Frank Mineo; Vicki Mineo

4184970.1