**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Puppies 'N Love, a d/b/a of CPI, Inc., et al.,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, et al.,<br><br>Defendant. | No. CV-14-00073-PHX-DGC<br><br>**PRELIMINARY INJUNCTION** |

Plaintiffs have filed a motion seeking a temporary restraining order and a preliminary injunction. Doc. 11. The motion is fully briefed and the Court held a hearing on March 27, 2014. For the reasons set forth below, the Court will grant the motion and enter a preliminary injunction.

**I.     Background.**

Plaintiffs Puppies 'N Love and its owners Frank and Vicki Mineo instituted this action on January 14, 2014. Plaintiffs challenge the constitutionality of Ordinance No. G-5973 ("the Ordinance"), which the City of Phoenix adopted at a City Council meeting on December 18, 2013. The Ordinance went into effect on January 17, 2014. Under the Ordinance, Phoenix pet shops can sell only dogs purchased from an animal shelter, a nonprofit humane society, or a nonprofit animal rescue organization. The Ordinance prohibits pet shops from selling puppies purchased from any breeder. Violation of the Ordinance is a criminal offense. The stated purpose of the Ordinance is to "target retail outlets that drive the wholesale production of dogs in inhumane 'puppy mills,' while also combating pet overpopulation and protecting consumers from the emotional and financial

hardships caused by unwitting purchases of a puppy mill puppy from a pet shop." Doc. 27 at 2. "Puppy mills" are inhumane dog breeding facilities where overcrowding, poor sanitation, and inadequate veterinary care are rampant. "The irresponsible breeding practices endemic to puppy mills . . . result in a host of hereditary and congenital diseases common to puppy mill puppies." *Id*.

Plaintiffs assert that they buy pure and specialty-breed puppies and sell them to individual consumers in their stores. They assert that such puppies are not available for them to purchase in sufficient numbers from shelters, humane societies, and animal rescue organizations, making their business model nonviable under the Ordinance. Plaintiffs claim that the Ordinance thus presents them with a Hobson's choice: either continue operating their business and incur criminal liability, or go out of business.

**II.    Legal Standard.**

In order to obtain a preliminary injunction, Plaintiffs must establish that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit continues to analyze the four elements using a "sliding scale" approach, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Should the moving party demonstrate a very high likelihood of injury, the likelihood of success on the merits may be relaxed. An injunction may be granted when serious questions going to the merits are raised and the balance of hardships tips sharply in the plaintiff's favor. *Wild Rockies*, 632 F.3d at 1135.

**III.   Analysis.**

    **A.    Ripeness.**

Defendant City of Phoenix ("the City") argues that Plaintiffs' complaint does not present a justiciable issue because the questions presented are not ripe for review.

Doc. 26 at 2. The City argues that because Plaintiffs have not received any letters, calls, or visits from City authorities threatening them with prosecution, Plaintiffs have "jumped forward into litigation on the speculation of future prosecution." *Id.* at 3-4.

Ripeness is a question of timing designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). The role of Article III courts is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution. *See* U.S. Const. art. III. To determine whether the ripeness requirement is satisfied, the Court must consider whether Plaintiffs face "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," or whether the alleged injury is too "imaginary" or "speculative" to support jurisdiction. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

The difference between an unripe, abstract question and a "case or controversy" is "one of degree . . . and is not discernible by any precise test." *Id.* at 297. Neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the ripeness requirement. *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996). "When contesting the constitutionality of a criminal statute, it is not necessary[, however,] that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Babbitt*, 442 U.S. at 298 (internal quotation marks and citation omitted). "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Id.*

The Ninth Circuit looks to three factors in making this determination: (1) whether the plaintiffs have articulated a "concrete plan" to violate the law in question, (2) whether

the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, or whether there is at least a credible threat of prosecution, and (3) the history of past prosecution or enforcement under the challenged statute. *Reno*, 98 F.3d at 1126-28. Considering these factors, the Court finds that Plaintiffs' complaint presents ripe questions for review.

First, Plaintiffs have a "concrete plan" to violate the Ordinance. Their entire business – selling puppies from USDA-licensed Class A breeders and hobby breeders – has been made unlawful by the Ordinance. Doc. 34 at 4. The conduct criminalized by the Ordinance is not conduct in which Plaintiffs engage only occasionally; it is their core business model.

Second, the City has not made a specific threat to initiate proceedings against Plaintiffs, but neither has the City disavowed an intent to prosecute Plaintiffs under the Ordinance. *Babbitt* found a similar refusal by the State of Arizona to "disavow[] any intention" to prosecute under a newly passed law adequate to support a finding of ripeness. 442 U.S. at 302. Plaintiffs openly admit that they engage in the very conduct the Ordinance makes criminal – selling puppies acquired from breeders. As in *Babbitt*, the Court finds that Plaintiffs are "not without some reason in fearing prosecution," making them and the City "sufficiently adverse" to satisfy the ripeness requirement. *Id.*

Third, the Ordinance is newly adopted. There is no history of past prosecution or non-prosecution that could allay Plaintiffs' fear of criminal liability.

The Court concludes that Plaintiffs' fear of prosecution under the Ordinance is not imaginary or speculative. Their business model has been made illegal, and their challenge to the Ordinance is sufficiently ripe to come before the Court.

**B.     Irreparable Harm.**

If enforcement of the Ordinance is not enjoined, Plaintiffs assert that they will go out of business. Doc. 11 at 4. Because the loss of one's business carries more than merely monetary consequences, it constitutes irreparable harm. *See Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009). Plaintiffs' business consists

almost entirely of acquiring pure and specialty-breed puppies and selling them to individual consumers in the Phoenix area. Doc. 11-1 at 12. Under the Ordinance, the only sources of puppies in Plaintiffs' niche would be animal shelters, nonprofit humane societies, and nonprofit animal rescue organizations. Plaintiffs have provided affidavits asserting that these sources of puppies would not be adequate to provide Plaintiffs with a sufficient number of healthy pure and specialty-breed puppies to sustain their store. *Id*.

At oral argument, the City asserted that Plaintiffs would not be irreparably harmed because they could switch their business to selling puppies from shelters, nonprofit humane societies, or nonprofit animal rescue organizations in conformity with the Ordinance. The Humane Society of the United States has made the same assertion. *See* Doc. 27 at 18. Plaintiffs have provided evidence, however, that they could not compete on a for-profit basis with subsidized shelters and humane societies that provide the same dogs for free or for a minimal price. Doc. 11-1 at 13. Plaintiffs credibly assert that their only lawful choice under the Ordinance is to close the doors of Puppies 'N Love and lay off their employees. *Id*. The Court finds that Plaintiffs have shown a likelihood of irreparable harm if the Ordinance is not enjoined.

**C.     The Balance of Hardships Tips Sharply in Plaintiffs' Favor.**

If the Court does not enjoin enforcement of the Ordinance against Plaintiffs, Plaintiffs will lose their business. If the Court enjoins enforcement of the Ordinance against them, Defendants assert that the City will be prevented from exercising its police power to "protect consumers from the often unknown, expensive, and heartbreaking side-effects associated with" puppy mills. Doc 27 at 18. But this concern is diminished considerably by Plaintiffs' evidence that they do not acquire dogs from puppy mills. Defendants also assert that "other entities that supported the Ordinance's passage will be forced to continue devoting resources to monitoring the receipt and sale of animals in Phoenix from puppy mills." Doc. 27 at 18. This concern is diminished considerably by the fact that Plaintiffs seek an injunction only with respect to their pet store, not all pet stores.

Weighing the hardship to Plaintiffs if enforcement of the Ordinance against them is not preliminarily enjoined (loss of their business) against the diminished concerns of Defendants if enforcement against Plaintiffs is enjoined (an inability to prosecute a business that is not supporting puppy mills), the Court finds that the balance of hardships tips sharply in Plaintiffs' favor.

### D. Serious Questions.

Because the Court has found that the balance of hardships tips sharply in Plaintiffs' favor, Plaintiffs need not show that they are likely to succeed on the merits. Instead, they can show that their complaint presents "serious questions going to the merits." *Wild Rockies*, 632 F.3d at 1135. "For the purposes of injunctive relief, 'serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc). "Serious questions need not promise a certainty for success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Id*. (quoting *Nat'l Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)); *see also Bernhardt v. L.A. County*, 339 F.3d 920, 926-27 (9th Cir. 2003).

The briefing and oral argument confirm that serious questions are presented in this case. Plaintiffs' Commerce Clause argument, although vigorously disputed, presents an issue worthy of factual development and the Court's careful consideration. Plaintiffs assert that the Ordinance discriminates against and imposes burdens on interstate commerce that far outweigh local benefits. Plaintiffs have also raised credible equal protection and special laws claims. The Court concludes that the status quo should be maintained to permit resolution of these issues.

### E. Public Interest and Balance of the Equities.

Defendants assert that a preliminary injunction is not in the public interest because it would not show proper regard for the rightful independence of state governments in

carrying out their domestic policy.  Doc. 26 at 17 (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943)).  The Court disagrees.  Although due regard for the independence of the City is surely warranted, countervailing public interests are also at stake.  These include interests served by the Commerce and Equal Protection Clauses of the United State Constitution and the Special Laws provision of the Arizona Constitution.  Those interests can be served in this case only by preserving the status quo while the serious questions raised by Plaintiffs' complaint are resolved.  *See Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002).  The Court finds that these public interests offset each other and do not weigh against issuance of a preliminary injunction.

The final consideration – balance of the equities – has been addressed above in the Court's consideration of the balance of hardships.

**IV.    Conclusion.**

The Court concludes that Plaintiffs have presented justiciable questions for the Court's consideration and have established the elements under *Wild Rockies* that entitle them to preliminary relief.

**IT IS ORDERED** that Plaintiffs' motion for a preliminary injunction (Doc. 11) is **granted**.  Defendants are enjoined from enforcing Ordinance No. G-5973 against Plaintiffs during the remainder of this litigation.

Dated this 2nd day of April, 2014.

_____
David G. Campbell
United States District Judge