**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Puppies 'N Love, Frank Mineo, and Vicki Mineo,<br><br>Plaintiffs,<br><br>v.<br><br>City of Phoenix, et al.,<br><br>Defendants, | No. CV-14-00073-PHX-DGC<br><br>**ORDER** |

Plaintiffs brought suit against Defendant City of Phoenix, challenging a City ordinance that prohibits pet stores from selling dogs and cats supplied by commercial breeders ("the Ordinance"). *See* Phoenix City Code § 8-3.06. Plaintiffs argued that the Ordinance violated the Dormant Commerce and Equal Protection Clauses of the U.S. Constitution as well as the Arizona Constitution's prohibition on special laws, and was preempted by state law. Doc. 1. The Court permitted the Humane Society of the United States ("HSUS") to intervene. Doc. 37. The Court granted summary judgment to Defendant and HSUS, ruling that the Ordinance did not violate the U.S. or Arizona Constitutions and was not preempted because it did not conflict with state law. Doc. 177.

While an appeal from this decision was pending before the Ninth Circuit, the Arizona Legislature enacted State Bill 1248. Contrary to the requirements of the Ordinance, the new law specifically allows pet stores to sell dogs and cats obtained from commercial breeders that meet certain requirements. A.R.S. § 44-1799.10. The law

contains an express preemption provision, stating that any local ordinance that imposes stricter requirements on pet dealers "is preempted." A.R.S. § 44-1799.11.

In light of this new statute, Plaintiffs filed a motion to dismiss in the Ninth Circuit, arguing that the statute preempted the Ordinance and mooted this case, and that automatic vacatur of this Court's summary judgment was appropriate. Doc. 209-1 at 2-17. The City and HSUS opposed the motion, arguing the case was not moot because the statute did not preempt the Ordinance under the Arizona Constitution, and that automatic vacatur was not appropriate because Plaintiffs persuaded the Arizona Legislature and Governor to adopt the new statute. *Id.* at 75-97. In response, the Ninth Circuit remanded the case to this Court "for consideration of the effect, if any," of the new legislation. Doc 207-1. Thus, the case has been fully remanded to this Court for consideration of the new statute.

The Court held a status conference on May 17, 2017. The parties and the Court agreed that the parties would file supplemental memoranda and stipulated facts on the preemption and vacatur issues. The parties have since made these filings. Docs. 216, 217, 218, 221. Plaintiffs' counsel stated at the status conference that they did not need further oral argument. Defense counsel reserved the right to request oral argument, but have not done so. *See* Doc. 218. After considering the briefs, stipulated facts, and relevant cases, the Court finds that the new statute preempts the Ordinance and that the summary judgment in favor of Defendant and HSUS should be vacated.

**I.    Background.**

Plaintiffs, their counsel, and their lobbyists drafted proposed legislation, contacted and met with legislators, and testified before the Arizona Legislature. Doc. 216 ¶¶ 1-9. Defendant and HSUS countered with a lobbying effort of their own. *Id.* ¶¶ 10-15. The Arizona Legislature ultimately enacted the proposed legislation and the Governor signed it into law. Doc. 216-1 at 30-31. The new law took effect on August 6, 2016, as A.R.S. §§ 44-1799.10 and 44-1799.11.

The statute provides that a pet store or dealer "may not obtain a dog or cat for resale or sell or offer for sale any dog or cat obtained from a person who is required to be

licensed by the pet dealer regulations of the United States department of agriculture" and who either is not currently licensed or has violated various regulations. A.R.S. § 44-1799.10(A). Thus, if breeders are currently licensed by the Department of Agriculture and have not violated the specified regulations, the statute permits pet stores or dealers to acquire dogs and cats from them. The statute expressly preempts any local law that imposes stricter regulations than the statute or prohibits the sale of a dog or cat "based on the source from which the animal is obtained if obtained in compliance with § 44-1799.10." A.R.S. § 44-1799.11. The Ordinance – which provides that pet stores and dealers can only sell animals obtained from shelters or nonprofit rescue organizations – imposes stricter regulations than the statute. Doc. 177 at 7. The parties agree that the statute is designed to preempt the Ordinance. Doc. 209 at 2.

**II.  Discussion.**

   **A.  Preemption.**

The Arizona Constitution has a home-rule charter provision. Under this provision, "eligible cities may adopt a charter – effectively, a local constitution – for their own government without action by the state legislature." *City of Tucson v. State*, 273 P.3d 624, 626 (Ariz. 2012). "The purpose of the home rule charter provision of the Constitution was to render the cities adopting such charter provisions as nearly independent of state legislation as was possible. Under it a city may provide for the exercise of every power connected with the proper and efficient government of the municipality where the legislature has not entered the field." *City of Tucson v. Walker*, 135 P.2d 223, 226 (Ariz. 1943) (internal quotation marks omitted). "The City of Phoenix, as authorized by the Arizona Constitution, Article 13, Section 2, has adopted a charter permitting it to enact municipal ordinances." *State v. McLamb*, 932 P.2d 266, 269 (Ariz. Ct. App. 1996).

As a charter city, Defendant "may exercise all powers granted by its charter, provided that such exercise is not inconsistent with either the constitution or general laws of the state." *Jett v. City of Tucson*, 882 P.2d 426, 429 (Ariz. 1994); *see also* A.R.S. § 9-

284(B). Defendant "is granted autonomy over matters of local interest." *City of Tucson v. State*, 333 P.3d 761, 763 (Ariz. Ct. App. 2014). In a case decided only weeks ago, the Arizona Supreme Court again described the relationship between general state statutes and local ordinances adopted by charter cities:

> Where the legislature has enacted a law affecting municipal affairs, but which is also of state concern, the law takes precedence over any municipal action taken under the home rule charter. But where the legislative act deals with a strictly local municipal concern, it can have no application to a city which has adopted a home rule charter. Whether or not an act of the legislature pertains to a matter of local or state-wide concern becomes a question for the courts when a conflict of authority rises.

*State ex rel. Brnovich v. City of Tuscon*, 399 P.3d 663, 673 (Ariz. 2017) (internal quotation marks omitted). The focus, as is evident from this language, is on the subject matter regulated by the state statute. The relevant inquiry "hinges on whether the subject matter is characterized as of statewide or purely local interest." *Id.* at 674 (internal quotation marks omitted). A court does not balance the evidence to determine whether the state or the city has a more pressing interest; the question is limited to the nature of the legislation's subject matter. *Id.* at 678-79.[1]

The new statute at issue in this case concerns pet stores and dealers and where they may acquire the dogs and cats they sell to the public. This subject matter clearly implicates state interests. For years, Arizona has regulated the health of animals sold by pet stores and dealers (A.R.S. § 44-1799.01); information such businesses must provide customers regarding the health of the dogs or cats they purchase (§ 44-1799.02); notices that must be posted by pet stores and dealers (*id.*); records such businesses must keep regarding the pets they sell (§ 44-1799.03); conditions for housing animals (§ 44-1799.04); detailed procedures and remedies for customers who purchase unhealthy animals (§ 44-1799.05 to .07); and penalties that can be imposed on pet stores and dealers

---

[1] Defendant and HSUS seem to argue that the City's demonstrated interest is greater than the State's (Doc. 218 at 2-3), but this is the type of balancing foreclosed by the Arizona analysis. *Id*. at 678-79.

which violate state laws (§ 44-1799.08). These statutes, which have been in place for 20 years, clearly demonstrate a state interest in regulating pet stores and dealers and the animals they sell. In addition, the new statute specifically states that "[t]he regulation of pet dealers is a matter of statewide concern," A.R.S. § 44-1799.11, and the Governor's signing statement confirms this interest, Doc. 216-1 at 30-31.

Furthermore, the Arizona Supreme Court has held that "[m]atters involving the police power generally are of statewide concern," *Brnovich*, 399 P.3d at 675, and courts have repeatedly found that the regulation of domestic animals is an exercise of police power. *See, e.g.*, *Reid v. Colorado*, 187 U.S. 137, 147-48 (1902) (describing regulation of cattle as an exercise of the state's police power); *Sentell v. New Orleans & C. R. Co.*, 166 U.S. 698, 704 (1897) (dogs are "subject to the police power of the state"); *Simpson v. City of L.A.*, 253 P.2d 464, 469 (Cal. 1953) (police power extends to the licensing, keeping, and controlling of dogs); *Greer v. Downey*, 71 P. 900, 901 (Ariz. 1903) ("a city charter, as an exercise of police power, may provide for the taking up and impounding of animals"). If state police power encompasses the licensing, keeping, and controlling of domestic animals, as these cases hold, it also encompasses how and by whom the animals are brought into the state and sold to the public.

What is more, to the extent Defendant historically has regulated domestic animals, it has done so pursuant to authority delegated from the State. *See* A.R.S. § 9-499.04 ("Any city and town may by ordinance provide for the appointment of animal control officers who may commence an action or proceeding before a court for any violation of a state statute or local ordinance relating to rabies and animal control that occurs within the jurisdiction of the city or town."); § 11-1007 (authorizing county agencies to enforce state statutory article on animal control). Instead of confirming the existence of a purely local concern, these statutes suggest that the Ordinance is an exercise of police power delegated from the State. *Brnovich*, 399 P.3d at 675 (municipalities have no inherent police power); *Luhrs v. City of Phx.*, 83 P.2d 283, 285 (Ariz. 1938) (activity conducted as an agent of the state is a statewide concern).

Cases from other jurisdictions have found that states and municipalities share a common interest in animal control. *See, e.g.*, *Mo. Pet Breeders Ass'n v. Cty. of Cook*, 106 F. Supp. 3d 908, 917 (N.D. Ill. 2015) ("Because both state and local governments have a vital interest in animal control, and the Illinois legislature has not barred local governments from exercising their home rule powers in this area, Cook County may regulate animal breeding and sales as part of its home rule authority."); *Simpson*, 253 P.2d at 468 ("the licensing, impounding and disposition of dogs is not exclusively a municipal affair, and, therefore, if there is any conflict between the ordinance and the state law, the latter will prevail").

Defendant and HSUS take a different approach, arguing that the subject matter at issue in this case should be defined very narrowly: whether dogs sold within the City of Phoenix should be sourced from shelters in an effort to stem animal homelessness. Doc. 218 at 4. They contend that such a narrow subject is purely a matter of local concern. *Id.* But the Court does not agree that the subject matter in this case can be defined so narrowly. As the Arizona Supreme Court has made clear, Arizona preemption analysis focuses on the subject matter of the state statute, not on the subject matter of the city ordinance:

> Where *the legislature* has enacted a law affecting municipal affairs, but which is also of state concern, the law takes precedence over any municipal action taken under the home rule charter. But where *the legislative act* deals with a strictly local municipal concern, it can have no application to a city which has adopted a home rule charter. Whether or not *an act of the legislature* pertains to a matter of local or state-wide concern becomes a question for the courts when a conflict of authority rises.

*Brnovich*, 399 P.3d at 673 (emphasis added; citation omitted). In this case, the legislative act is considerably broader than animal homelessness in Phoenix. It concerns the sources of pets acquired by pet stores and dealers throughout the state. Although that subject certainly includes local concerns, it also involves state interests as shown above.

Additionally, the Arizona Supreme Court "has narrowly limited the concept of 'purely municipal affairs,'" recognizing only two matters of purely local concern: the

- 6 -

conduct of municipal elections and the disposition of municipal real estate. *Id*. at 677. The Court cannot find the subject of the statute in this case to be limited to such clearly local concerns, and Defendant and HSUS cite no controlling case holding that the regulation of pet stores and dealers should be added to Arizona's circumscribed list of purely local interests. Indeed, among the various cases they cite, most do not find that the regulation of pet sales or pet treatment is a matter of purely local concern. *See N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*, 143 F. Supp. 3d 50, 63 (E.D.N.Y. 2015) (finding that a local mandatory sterilization provision was not preempted by state law because it did not *actually conflict* with state law); *Maryeli's Lovely Pets, Inc. v. City of Sunrise*, No. 14-61391-CIV, 2015 WL 11197773, at *5 (S.D. Fla. June 25, 2015) (declining to decide whether state law preempted a local ordinance banning the sale of all dogs and cats not bred by the seller or purchased from a "hobby breeder"); *Hardwick v. Town of Ceredo*, No. 11-1048, 2013 WL 149628, at *2 (W. Va. Jan. 14, 2013) (finding that "[t]he ownership, maintenance and control of dogs or other animals within city limits is a local concern which does not exceed the limitations of the home rule doctrine[,]" but making no determination that this interest is exclusive); *City of Dickinson v. Thress*, 290 N.W. 653, 655 (N.D. 1940) (cities conduct animal control pursuant to police power delegated by the state); *State ex inf. Major v. Kansas City*, 134 S.W. 1007, 1013 (Mo. 1911) (finding that animal control is "chiefly" of local concern, but making no finding that this interest is exclusive); *Hannan v. City of Minneapolis*, 623 N.W.2d 281, 285 (Minn. Ct. App. 2001) (finding that a state law did not preempt a local ordinance allowing for the destruction of dangerous dogs because "the legislature has neither expressly nor impliedly indicated that the subject matter is solely a matter of state concern. In fact, state law expressly provides for local regulation.").

In summary, the Ordinance can withstand the preemptive effect of the new statute only if it "deals with a strictly local municipal concern." *Brnovich*, 399 P.3d at 673. The Court cannot conclude that this requirement is satisfied. Although the Court does not doubt that the City has real interests in the regulation of pet stores and the sources of the

animals they sell, state interests are involved as well. And "[w]here the legislature has enacted a law affecting municipal affairs, but which is also of state concern, the law takes precedence over any municipal action taken under the home rule charter." *Id.* Arizona cases "have consistently recognized this significant constitutional restraint on charter cities' powers." *Id.* at 677. The statute preempts the Ordinance.

**B.     Vacatur.**

Plaintiffs ask the Court to vacate its judgment in favor of Defendant and HSUS. Doc. 217 at 5-7. When considering whether to vacate a prior judgment on the basis of changed circumstances, the "threshold question" in the Ninth Circuit is "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Chem. Producers and Distribs. Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006) (quoting *U.S. Bancorp Mortg. Co. v Bonner Mall P'ship*, 513 U.S. 18, 24 (1994)). Where this occurs, the district court must "weigh the equities and determine whether it should vacate its own judgment." *Id.* (internal quotation marks omitted). This rule targets parties who attempt to escape judgment by voluntarily ceasing the conduct at issue without any limit on their ability to resume that activity in the future.

Defendant and HSUS argue that the judgment in their favor should not be vacated because Plaintiffs persuaded Arizona to pass the statute. Doc. 218 at 5-9. In *Chemical Producers*, the party seeking to vacate a prior judgement on the basis of new legislation had sent letters to and discussed the new legislation with state legislators. 463 F.3d at 879. The Ninth Circuit held that "[l]obbying Congress or a state legislature cannot be viewed as 'causing' subsequent legislation for purposes of the vacatur inquiry." *Id.* "The principle that legislation is attributed to the legislature alone is inherent in our separation of powers." *Id.* This rule applies to "mootness caused by enactments of Congress and state legislatures." *Id.* at 880.

Defendant and HSUS argue that *Chemical Producers* is inapplicable because the actions in that case – writing letters to and discussions with legislators – were far less pervasive than Plaintiffs' lobbying efforts in this case. Doc. 218 at 7. But *Chemical*

- 8 -

*Producers* held broadly that lobbying efforts do not cause federal or state legislative enactments. 463 F.3d at 879. This holding was based on separation of powers principles and eschews any judicial inquiry into the causes of legislative action. *Id.*

Defendant and HSUS contend that even if the Court applies *Chemical Producers*, Plaintiffs must still show equitable entitlement to vacatur. Doc. 218 at 6-7 (citing *U.S. Bancorp*, 513 U.S. at 26). But this misreads *U.S. Bancorp*, which considered "whether courts should vacate where mootness results from a settlement." 513 U.S. at 23. Where the parties share responsibility for the mootness of a case, as in a settlement, the party seeking vacatur must show "equitable entitlement to the extraordinary remedy of vacatur." *Id.* at 26. This comports with the Ninth Circuit interpretation that a party causing the mootness can nonetheless seek vacatur if it demonstrates that the equities require it. *Chem. Producers*, 463 F.3d at 878. But such a burden does not fall on Plaintiffs because, under *Chemical Producers*, they cannot be said to have caused the legislation.

Defendant and HSUS argue that the public interest nonetheless favors a denial of vacatur. Doc. 218 at 7-8. Specifically, they argue that a vacatur would rob the public of the opportunity to rely on the legal analysis in the Court's prior decision. *Id.* Not so:

> In practical terms, the significance of this dispute largely amounts to the impact of the phrase "vacated on other grounds." No matter what we conclude, the opinion of the district court will not be ripped from Federal Supplement [3d]. It will still be available and will still be citable for its persuasive weight. That's all the weight a district court opinion carries anyway, outside of future litigation involving the same parties and their privies, because a district court opinion does not have binding precedential effect.

*NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007) (internal citations omitted).

Amicus separately argues that vacatur is inappropriate because it would prevent Tempe from relying on claim preclusion to avoid future lawsuits. Doc. 220 at 4. The

Court cannot conclude, however, that such a collateral concern should control the Court's decision in this case.

**IT IS ORDERED:**

1. The Ordinance at issue in this case, Phoenix City Code § 8-3.06, is preempted by A.R.S. § 44-1799.10 and § 44-1799.11.
2. The Court's judgment in favor of the City of Phoenix and HSUS is **vacated**.
3. The City of Tempe's motion to file its amicus curiae brief (Doc. 219) is **granted**.
4. The Clerk is directed to terminate this action.

Dated this 18th day of October, 2017.

_____
David G. Campbell
United States District Judge